**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

KEVIN L. BRADLEY,                              :

     Plaintiff,                             :        Case No.  3:05CV314

vs.                                           :        District Judge Thomas M. Rose
                                                       Magistrate Judge Sharon L. Ovington
ROBERT DEWITT, *et al*.,                       :

     Defendants.                            :

===============================================================

**REPORT AND RECOMMENDATIONS[1]**

===============================================================

## I.        INTRODUCTION

Plaintiff Kevin L. Bradley, an inmate at the Lebanon Correctional Institution in Lebanon, Ohio, brings this case *pro se* under 42 U.S.C. §1983.  Bradley claims that Defendants violated his rights under the United States Constitution in connection with searches of his home and vehicle, with his arrest, and with his prosecution.

A search of public records reveals that Bradley is currently serving an eight-year sentence due to several state criminal convictions in Champaign County, Ohio including vandalism, possession of drugs, illegal possession of chemicals, and attempted perjury.  *See* http://www.drc.oh.us/OffenderSearch.

This matter is before the Court upon Defendants, Scott Curnutte of the Champaign County, Ohio Sheriff's Department and prosecutor Nick Selvaggio's Motion for Judgment on the

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Pleadings (Doc. # 30), Plaintiff's Response (Doc. # 34) and Defendants' Cornutte and

Selvaggio's Reply (Doc. # 36), and Defendants' Police Officers Robert DeWitt, Timothy Bostic,

Mike Gibson and the Village of Mechanicsburg's ("Mechanicsburg Defendants") Motion to

Dismiss (Doc. # 32), Plaintiff's Response (Doc. # 35), the Mechanicsburg Defendants Reply

(Doc. # 37), and the record as a whole. For the reasons set forth below, it is recommended that

all of Plaintiff's claims should be dismissed with prejudice.

## II.    BRADLEY'S CLAIMS

Bradley's first claim challenges the search of his home on September 10, 2003, and is

based on the following allegations:

> Plaintiff ... alleges that unknown authorities forced entry into Bradley's
> home without the benefit of a search warrant and without probable cause or
> exigent circumstances.
>
> Plaintiff further alleges that he was not home when the search took place,
> but upon his return [he] found the door kicked in and left unsecured, found the
> residence ransacked, and found personal property either destroyed, damaged, or
> entirely missing.
>
> Plaintiff further alleges that there was no warrant or property inventory
> left at the residence, and there was nothing else left by the authorities to inform
> Mr. Bradley of the identity or by what authority the search of his home had been
> conducted.
>
> Plaintiff further alleges that once the authorities involved in the search
> learned through B.C.I. testing that none of the items taken in the search had
> yielded positive results for illegal substances, the entire incident involving illegal
> search of Bradley's home was attempted to be concealed from Bradley by the
> authorities in charge.
>
>                                         * * *
>
> Based on these underlying facts, Plaintiff alleges,
>
> On September 10, 2003, while acting under the color of law as Lead

2

> Narcotics Officer for the Village of Mechanicsburg, Officer Robert DeWitt
> caused my residence located in an adjacent county to be searched and property
> seized without a search warrant or probable cause.  Officer DeWitt caused
> unknown Officers to ransack my home, destroy, damage, and seize personal
> property which yielded no fruits of criminal activity and resulted in no criminal
> charges.

(Doc. #7 at ¶s 8-13).

Bradley next claims that Officer DeWitt violated his rights under the Fourth and
Fourteenth Amendments to the Constitution by using excessive and unreasonable force to arrest
him.  The arrest occurred on December 30, 2003.  *Id*. at ¶14.  Bradley explains that the excessive
and unreasonable force alleged occurred when Officer DeWitt used "his patrol vehicle to ram
Mr. Bradley's vehicle from the roadway and through a utility pole causing the utility pole to
snap in half and causing extensive damage to Bradley's vehicle."  *Id*. at ¶15.  Bradley maintains
that this "use of force was initiated in the absence of any evidence indicating that Mr. Bradley
had committed a felony offense, an act of violence, or posed a real and immediate threat of harm
to anyone on the roadway."  *Id*. at ¶16.  Bradley further states that the "use of excessive and
unreasonable force disabled Mr. Bradley's vehicle, caused extensive damage to Mr. Bradley's
person and property, and violated long established constitutional boundaries."  *Id*. at ¶22.  He
argues, "this claim does not implicate the validity of the instant conviction and sentence because
it does not challenge the issue of probable cause or admissibility of evidence."  *Id*. at ¶23.

Bradley's next claims that the excessive use of force to effect his arrest "was caused in
part by the failure of Chief of Police Timothy Bostic to train and supervise his subordinate police
officers."  *Id*. at ¶24.  Bradley alleges that Defendant Bostic "directly participated in the illegal
search, or the events leading to the illegal search of Mr. Bradley's home on September 10,
2003."  *Id*. at ¶25.

3

Bradley's claims that the Village of Mechanicsburg violated his rights under the Fourth Amendment in various ways including, for example, by its custom of hiring unqualified supervisory officials, failing to provide any training to inexperienced police officers, and placing inexperienced and untrained police officers in the position of supervising themselves thus showing a policy of deliberate indifference to the rights of citizens with whom the police officers interact. *Id*. at ¶s 34-38.

Bradley's also alleges that Defendants conspired and acted in concert to do whatever was necessary, lawful or not, to cause the violations of his rights under the Fourth Amendment. Bradley alleges in part that Defendants DeWitt and Gibson "falsified the affidavit to obtain a search warrant days after they had already searched the vehicle in the ongoing conspiracy to conceal their illegal activities." (Doc. #9 at ¶4). Bradley maintains that Defendants DeWitt, Gibson, Bostic, and Curnutte "conspired to present false evidence ... in furtherance of the objective of depriving Mr. Bradley of his Fourth Amendment rights and his right not to be deprived of his liberty without due process of law." *Id*. at ¶7.

Bradley's sixth claim "alleges that [Prosecutor] Nick Selvaggio, while acting in the investigative capacity, conspired, acted in concert, and aided and abetted Robert DeWitt, Timothy Bostic, Scott Curnutte, and Mike Gibson, to do whatever was necessary, lawful or not, to cause Mr. Bradley to be deprived of his Fourth Amendment rights, and, ultimately, to be deprived of his liberty through the knowing fabrication and use of false evidence." *Id*. at ¶11. Bradley also alleges that Defendant Selvaggio fabricated evidence, orchestrated the fabrication of evidence, falsified legal documents, and presented perjured testimony in violation of his rights under the Fourth Amendment and depriving him of his liberty without due process of law. *Id*. at

4

¶s 12-16.

Bradley alleges, "the underlying conviction has been reversed on direct appeal, and ... none of the claims stated herein have been fully and fairly considered by a Court of law." *Id.* at ¶17.   Bradley is apparently referring to the Ohio Court of Appeals' decision reversing his original criminal convictions on the ground that he was compelled to attend trial in his jail clothing in violation of his rights under the Fifth and Fourteenth Amendments.  (Doc. #32, Exhibit A; *see State of Ohio v. Kevin Bradley*, 2005 WL 3346082 (Ohio App. Dist. 2, December 9, 2005)).  As will be explained further below, that decision rejected Bradley's remaining claims as meritless or moot.

## III.    MOTIONS TO DISMISS

The Mechanicsburg Defendants contend that Bradley's claims against them must be dismissed under Fed. R. Civ. P. 12(b)(6) for four reasons: (1) because his first and part of his third claims are barred by the applicable two-year statute of limitations, (2) because his claims are barred under the doctrine announced in *Heck v. Humphrey*, 512 U.S. 477 (1994); (3) because his claims are barred under the *Rooker-Feldman* doctrine; and (4) because qualified immunity shields these Defendants from Bradley's claims.

When resolving a Motion to Dismiss under Rule 12(b)(6), the factual allegations in the Complaint must be taken as true and construed in a light most favorable to the plaintiff.  *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).  Because Bradley brings this case *pro se*, the Court liberally construes his allegations in his favor.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Williams v. Browman*, 981 F.2d 901, 903 (6th Cir. 1992).  "A pro se Complaint is held to an especially liberal standard, and should only be dismissed for failure to state a claim if it appears

5

'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000)(quoting in part *Estelle*, 429 U.S. at 106.

The Court "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. State of Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). Indeed, a Motion to Dismiss is often a proper procedural device for resolving questions of law. *E.g., Mixon*, 193 F.3d at 400 and n.9.

## IV. DISCUSSION

### A. <u>Statute of Limitations</u>

A two-year statute of limitations applies to federal constitutional claims brought in Ohio under 42 U.S.C. §1983. *See Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989).

Bradley's first claim and part of his third claim concern Police Officer DeWitt's involvement with the search of Bradley's home on September 10, 2003. Bradley, however, filed his Complaint in this case on September 13, 2005, more than two years after the September 10, 2003 search of his home. There is nothing in Bradley's pleadings indicating that he did not know about the search when it occurred on September 10, 2003. Yet, Bradley waited more than two years, until September 13, 2005, to file his Complaint instituting the present case.

Accordingly, the applicable two-year statute of limitations bars Bradley's first claim and part of his third claim to the extent it rests on allegations concerning the search of his home on September 10, 2003.

### B. <u>*Heck v. Humphrey*</u>

Even if all of Bradley's claims are considered timely, his claims – with one exception –

are subject to dismissal under *Heck v. Humphrey*, 512 U.S. 477 (1994).

When examining §1983 claims, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck,* 512 U.S. at 487. The focus here is on the remedy resulting from a potential success on the merits of the constitutional claims, rather than on the particular remedy the plaintiff seeks. *See id*. Consequently, even if a prisoner only seeks monetary damages for claimed federal constitutional violations, his or her claims are not cognizable under §1983 when success on the merits would necessarily implicate the invalidity of the punishment imposed. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *see also Heck*, 512 U.S. at 487.

In the instant case, the success of Bradley's Fourth and Fourteenth Amendment claims against Defendants DeWitt, Gibson, and Bostic relating to the searches of his home and vehicle, and to the alleged lack of a warrant or probable cause to support his arrest, and to their misconduct before and during his criminal trial would necessarily implicate the validity of his convictions of, at least, possession of drugs and illegal possession of chemicals. Consequently, his Fourth Amendment challenges to his seizure and arrest are not cognizable in the instant case. *See Wood*, 520 U.S. at 648; *see also Heck*, 512 U.S. at 487; *Martin v. Girard*, 2000 WL 658326 at *2 (6th Cir., May 12, 2000).

Defendants Curnutte and Selvaggio do not raise a *Heck v. Humphrey* argument*, see* Doc. #s 30, 36, choosing instead to rely on the defenses of absolute and qualified immunity. However, a *sua sponte* review[2] of Bradley's pleading reveals that any success he may have on

---

[2] *Sua sponte* review is warranted under 28 U.S.C. §1915(e)(2), which mandates dismissal of a case "at any time if the court determines that ... the action ... is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

his claims against these Defendants will necessarily implicate the validity of his convictions. Bradley bases his claims against Defendant Curnutte upon his role in the warrantless search of Bradley's vehicle, in the lack of an inventory search, in the conspiracy to violate Bradley's constitutional rights, in the presentation of false evidence against Bradley, and in certain misconduct (for example, falsification of evidence) before and during Bradley's criminal trial. (Doc. #9 at ¶s 1-10).  If Bradley proved any of these claims, the validity of his convictions would necessarily be implicated, and *Heck v. Humphrey*, 512 U.S. at 487, bars these claims.  *See Martin*, 2000 WL 658326 at *2 .  Consequently, Bradley's constitutional claims against Defendant Curnutte are not cognizable in the instant case.

Bradley alleges that Defendant Selvaggio engaged in many specific acts of misconduct (for example, falsification of evidence and suppressing exculpatory evidence) before and during Bradley's criminal trial.  (Doc. #9 at ¶s 11-17).  Success in proving these claims would necessarily implicate the validity of Bradley's convictions and *Heck v. Humphrey*, 512 U.S. at 487, bars these claims.  *See Finley v. Densford*, 90 Fed. Appx. 137, 138, 2004 WL 542191 at **1 (6th Cir. 2004).  Consequently, Bradley's constitutional claims against Defendant Selvaggio are not cognizable in the instant case.

Although Bradley alleges in his Amended Complaint, "the underlying conviction has been reversed on direct appeal, and ... none of the claims stated herein have been fully and fairly considered by a Court of law," (Doc. #9 at ¶17), this allegation overlooks the sole basis for the Ohio Court of Appeals' reversal of his conviction – he was compelled to attend trial in jail clothing in violation of his rights under the Fifth and Fourteenth Amendments, *see State of Ohio v. Kevin Bradley*, 2005 WL 3346082 at *4-*5 (Doc. #32, Exhibit A).  The responsibility for this

violation rested with the trial court not with the Prosecutor or the Police Officers involved in Bradley's case. Because the prison-clothing issue was the sole basis for the reversal of Bradley's convictions, *see id*., the reversal did not implicate a violation of his federal constitutional rights by Defendants DeWitt, Gibson, Bostic, Curnutte, or Selvaggio.

In addition, the sole basis for the Ohio Court of Appeals' reversal did not involve any allegation or constitutional violation Bradley raises against any Defendant in the present case. Ohio public records, moreover, establish that on remand, Bradley was convicted of four criminal offenses – namely, vandalism, possession of drugs, illegal possession of chemicals, and attempted perjury.[3] Bradley has not alleged or shown that these convictions are unrelated to the conduct at issue in his claims and allegations in the present case. He has thus failed to avoid the required dismissal of his claims – with one exception – under *Heck v. Humphrey*.

The single exception to the above analysis is Bradley's claim that Police Officer DeWitt used excessive force to effect his arrest in violation of his rights under the Fourth and Fourteenth Amendments. "As a matter of sheer logic, one may bring a successful excessive-force claim without having to establish that the resisting-arrest charge was unlawful: An officer could legitimately arrest a suspect but use excessive force in bringing the suspect to the station. And as a matter of state-court precedent, Ohio law permits exactly that type of excessive-force claim, namely one that follows a lawful arrest." *Swiecicki v. Delgado*, 463 F.3d 489, 504 (6th Cir. 2006).

The pertinent issue is whether to prevail with his Fourth Amendment excessive force claim, Bradley would have to negate an element of his underlying criminal convictions.

---

[3] *See* http://www.drc.oh.us/OffenderSearch.

*Swiecicki,* 463 F.3d at 504.  For Bradley to prevail on his Fourth Amendment excessive force claim against Officer DeWitt, he will not have to negate any element of his underlying criminal convictions – namely, vandalism, possession of drugs, illegal possession of chemicals, and attempted perjury.  He instead will have to demonstrate that Officer DeWitt used an objectively unreasonable amount of force under the totality of the circumstances in the particular situation he faced.  *See Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004); *see also Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001).  "The test's 'proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  *Champion*, 380 F.3d at 901 (quoting *Graham v. Connor,* 490 U.S. 386, 395, 396 (1989)).  Consideration of this test will not require Bradley to negate any element of his convictions.  And, consequently, his potential success on his Fourth Amendment excessive force claim against Officer DeWitt will not necessarily implicate the validity of his criminal convictions.  *Heck v. Humphrey* thus presents no bar to this claim.  *See Swiecicki,* 463 F.3d at 504-05.

Accordingly, all of Bradley's claims – with the exception of his second claim that Officer DeWitt violated his rights under the Fourth Amendment by using excessive and unreasonable force when arresting him – are not cognizable in the present case.

### C.  *Rooker-Feldman*

The Mechanicsburg Defendants contend that this Court lacks jurisdiction to resolve Bradley's claims under the *Rooker-Feldman* doctrine.  They explain:

> [T]he Plaintiff was the defendant in the state court and asserted a claim that his arrest was unlawful due to the excessive force by Defendant DeWitt and that the warrant to search his vehicle lacked probable cause.  The state court overruled both of these claims on the merits (although the case was remanded for further proceedings on other grounds).  His federal claim is so intertwined with the state court's judgment that it can only succeed by a finding that the state court wrongly decided the issues before it.

> The issues raised by Plaintiff's Second and Fifth Claims have already been decided on the merits by the state court of appeals in Plaintiff's criminal case and the conduct complained of was found to be lawful, therefore constitutional, and all Defendants are entitled to dismissal of these claims.

(Doc. #32 at 9).  These contentions lack merit.

"*Rooker-Feldman* is a doctrine with only limited application."  *Coles v. Granville*, 448 F.3d 853, 857 (6th Cir. 2006).  "The *Rooker-Feldman* doctrine ... stands for the proposition that a party aggrieved by a state-court decision, cannot appeal that decision to a district court, but must instead petition for a writ of certiorari from the United States Supreme Court."  *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004)(citations omitted).  "The purpose of the doctrine is to prevent 'a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'"  *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003)(citations omitted).

"Two categories of claims are barred by *Rooker-Feldman*:  those which allege some injury arising directly from the state court's judgments, and those which allege an injury predating the state-court's judgments but which are still 'inextricably intertwined' with state-court judgments."  *Howard v. Whitbeck*, 382 F.3d 633, 639 (6th Cir. 2004).  "In order to determine the applicability of the *Rooker-Feldman* doctrine, the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court

judgment itself or is distinct from that judgment. If the injury alleged resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal courts lack jurisdiction. If the injury alleged is distinct from that judgment, *i.e.*, the party maintains an injury apart from the loss in state court and not 'inextricably intertwined' with the state judgment, ... res judicata may apply, but *Rooker-Feldman* does not...." *Stemler v. Florence*, 350 F.3d 578, 589 (6th Cir. 2003); *see Coles*, 448 F.3d at 857-58.

Bradley's claims in the present case do not result from the underlying criminal convictions but instead are based on Defendants' allegedly unconstitutional conduct in searching his home and vehicle, in effecting his arrest, and in connection with his criminal prosecution. Although these alleged unconstitutional activities eventually led to Bradley's criminal convictions, Defendants' alleged misconduct – not the convictions themselves – are the source of Bradley's claims. As a result, *Rooker-Feldman* does not bar this Court's consideration of Bradley's federal constitutional claims. *See Stemler*, 350 F.3d at 589; *see also Coles*, 448 F.3d at 857-59.

Accordingly, the Mechanicsburg Defendants reliance on *Rooker-Feldman* lacks merit.

### D.  <u>Qualified Immunity</u>

The sole remaining claim is Bradley's second claim alleging that Officer DeWitt used excessive force to effect his arrest in violation of the Fourth and Fourteenth Amendments. The Mechanicsburg Defendants contend that qualified immunity shields them from this claim (indeed, from all of Bradley's claims), because it is barred by the doctrines announced in *Heck v. Humphrey* and *Rooker-Feldman*. (Doc. #32 at 10). Yet, as explained above, neither *Heck v. Humphrey* nor *Rooker-Feldman* apply to Bradley's Fourth Amendment excessive force claim

against Officer DeWitt.  As a result, *Heck v. Humphrey* and *Rooker-Feldman* do not support the

application of qualified immunity to this particular claim.

A *sua sponte* review,[4] however, of Bradley's Fourth Amendment excessive force claim

against Officer DeWitt reveals that this claim lacks merit mainly because the Ohio Court of

Appeals made the following factual findings:

> The Mechanicsburg Police Department had information that Bradley was involved in the illegal manufacture of methamphetamine.  Officer Robert DeWitt, who knew that Bradley drove a red Nissan truck, was on routine patrol when he saw a red Nissan truck parked near a store on North Main Street.  He called to have the license plate checked and found that the plate was not registered to Bradley, but that it was not registered to a red Nissan truck.  He was told that Bradley's driver's license had been suspended.  Officer DeWitt parked across the street to see who came out to the truck.

> Soon Officer DeWitt saw a man, whom he believed and later confirmed was Bradley, carrying items to the truck from a nearby apartment.  When Bradley got into the truck and started to drive away, Officer DeWitt followed and soon saw Bradley fail to stop and narrowly miss hitting another vehicle.  Officer DeWitt turned on his lights and siren.  Bradley continued to drive, and Officer DeWitt saw him throw what appeared to be white powder out of the window.  Soon after Bradley crashed into some utility pole wires, but was able to keep running from the police.

> Off-duty Officer Scott Bodey joined the chase in his own vehicle, with a red light flashing.  Bradley ran another stop sign and briefly drove through a field before returning to the road.  Officer DeWitt decided to gently bump the truck's bumper with his cruiser.  As he executed this 'pit maneuver,'[5] he was close enough to positively identify Bradley, who briefly lost control of his truck and hit a utility pole, but then continued to drive through a field.  When Officer DeWitt caught up with Bradley, the two made eye contact.  Bradley then deliberately struck the cruiser with his truck, and the cruiser became stuck in the mud.

> Bradley returned again to the road with Officer Bodey still following.

---

[4] This *sua sponte* review is warranted under 28 U.S.C. §1915(e)(2).  *Supra*, n.3.

[5] Legal research reveals that a "pit" refers to a "pursuit intervention tactic."  "A PIT involves bumping, ramming or sideswiping a vehicle in order to end a chase."  *Abney v. Coe*, 2006 WL 1117784 at *3 (M.D.N.C., April 25, 2006).

Sheriff Deputy Chuck Arnold and Ohio Highway Patrol Trooper Steve Huck
briefly joined the chase until they identified the driver, when they abandoned their
pursuit pursuant to their department policies. Officer Bodey continued to pursue
Bradley but briefly lost sight of him until a citizen informed him that a red truck
had turned down a gravel lane. By this time Officer DeWitt had caught up with
Bodey, and the two proceeded down the lane. The officers found Bradley's
damaged truck in a field nearly two miles down the lane. The driver's side door
was crunched from hitting Officer DeWitt's cruiser, and the passenger door was
open....

(Doc. #32, Exh. A). Bradley was later arrested.

"As a general rule, a federal civil action brought under §1983 is not a venue for re-

litigating issues that were decided in a prior state criminal case." *McKinley v. City of Mansfield*,

404 F.3d 418, 428 (6th Cir. 2005). "A state court judgment must be given the same preclusive

effect in federal court that it would be given in the courts of the rendering state." *Walker v. R.*

*Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988) (citing *Migra v. Warren City School Dist. Bd. of*

*Educ.*, 465 U.S. 75, 85 (1984))(other citations omitted). Because Bradley's criminal proceedings

occurred in the Ohio courts, Ohio issue preclusion law applies to determine whether he may re-

litigate in this case issues that were previously decided by the Ohio courts. *See McKinley*, 404

F.3d at 428.

The Ohio Supreme Court describes the applicable preclusion doctrine as follows:

> [T]he doctrine of collateral estoppel, or more correctly issue preclusion,
> precludes further action on an identical issue that has been actually litigated and
> determined by a valid and final judgment as part of a prior action among the same
> parties or those in privity with those parties.

*State of Ohio v. Williams*, 76 Ohio St.3d 290, 294 (1996); *see McKinley*, 404 F.3d at 428-29 (and

Ohio case cited therein). *See Allen v. McCurry*, 449 U.S. 90, 104 (1980); *see also Walker* 854

F.2d at 142. Indeed, "[t]he main legal thread which runs throughout the determination of the

applicability of *res judicata*, inclusive of the adjunct principle of collateral estoppel, is the

necessity of a fair opportunity to fully litigate and to be 'heard' in the due process sense. Accordingly, an absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action." *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1268 (6th Cir. 1986).

In Bradley's first appeal of his convictions to the Ohio Court of Appeals, he raised two assignments of errors based on his theory that Officer DeWitt used excessive force to effect his arrest. In his First Assignment of Error, Bradley claimed, "the trial court erred in refusing to suppress the evidence found in his abandoned truck, because the officers used excessive force in stopping him." (Doc. #32, Exh. A). In his Second Assignment of Error, Bradley argued, "trial counsel was ineffective for failing to raise an argument that would have compelled the suppression of evidence seized from Mr. Bradley's truck." *Id*. In light of these Assignments of Error, both the trial court and the Ohio Court of Appeals provided Bradley with a full and fair opportunity to litigate his excessive force claim, including the facts underlying this claim. The Ohio courts' factual determinations, moreover, were actually litigated, directly determined, and essential to the Ohio Court of Appeals rejection of Bradley's First and Second Assignments of Error. Accordingly, Ohio preclusion law applies to the facts, reviewed above, found by the Ohio courts when rejecting Bradley's claim that Officer DeWitt used excessive and unreasonable force to effect his arrest.

A review of the facts determined by the Ohio courts convinces that the amount of force used by Officer DeWitt during his attempt to arrest him did not violate the Fourth and Fourteenth Amendments.

15

"[A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness standard.'"  *Champion*, 380 F.3d at 901 (quoting in part *Graham* , 490 U.S. at 395).

> In determining whether an officer's actions were reasonable, the specific facts of each case are key....  Courts should pay particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'  While courts must look to the totality of the circumstances in determining whether a seizure was reasonable, they must be sure to view those facts 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'

*Kostrzewa*, 247 F.3d at 639 (quoting in part *Graham*, 490 U.S. at 396); *see Champion*, 380 F.3d at 901.  The test is, in light of the above considerations and without regard to the subjective motivations of the police officer, did the officer use an objectively reasonable amount of force in the particular situation he or she faced.  *See Champion*, 380 F.3d at 901; *see also Kostrzewa*, 247 F.3d at 639; *Adams v. Metiva*, 31 F.3d 375, 385 (6th Cir. 1994).

Although Bradley alleges in his pleadings that Officer DeWitt's "use of force was initiated in the absence of any evidence indicating that Mr. Bradley had committed a felony offense, an act of violence, or posed a real and immediate threat of harm to anyone on the roadway," (Doc. #7 at ¶16), Officer DeWitt's act of chasing Bradley was not a violation of the Fourth Amendment.  "[T]he use of high-speed pursuits by police officers is not an unreasonable method of seizing traffic violators....  By engaging in high-speed pursuits, without more, police use absolutely no force....  By activating his blue lights and siren, an officer directs a traffic violator to pull to the side of the road where the traffic violator can expect to be detained for a few minutes and released.  When the traffic violator decides to flout that order and flee from the

officer, and the officer responds by following the violator, the intrusiveness occasioned by the officer's conduct is slight." *Galas v. McKee,* 801 F.2d 200, 203 (6th Cir.1986); *see Tallman v. Elizabethtown Police Dept.*, 167 Fed. Appx. 459, *464, 2006 WL 166610 at **4 (6th Cir. 2006).

During the high-speed chase, Officer DeWitt used force by bumping Bradley's truck. Thus, the next issue is whether, under the totality of the circumstances facing Officer DeWitt, the bumping constituted an objectively unreasonable use of force. *See Champion*, 380 F.3d at 901; *see also Kostrzewa*, 247 F.3d at 639. Under the totality of the circumstances, particularly given the relatively minimal amount of force used by Officer DeWitt, the bump of Bradley's truck was not objectively unreasonable. The relatively minimal amount of force is established, even though Bradley's truck was damaged, by the facts that Bradley continued to drive, using his truck to escape, after being bumped by Officer DeWitt. Bradley also used his truck to bump Officer DeWitt's cruiser, a fact further showing that Bradley's truck continued to be operable, and hence not seriously damaged by the amount of force Officer DeWitt had used. The amount of force, moreover, was not lethal to Bradley, and he does not allege that he suffered any serious physical injury or that he needed any medical care as a result of Officer DeWitt's act of bumping his truck during the chase. Perhaps most significantly, is the fact that the amount of forced used by Officer DeWitt did not succeed in stopping Bradley's truck. Bradley not only eluded arrest at the moment of the bump, he later used his truck to force Officer DeWitt's cruiser into being stuck in mud, and he then used the truck to elude chase by two other police officers. These facts tend to show that Officer DeWitt used a minimal amount of force in an unsuccessful attempt to stop Bradley from fleeing further in his truck.

In addition, Bradley's attempt to elude arrest by fleeing in his truck placed in danger

17

Officer DeWitt, the other officers involved in the chase, and the public.  This danger, together with the relatively minimal amount of force Officer DeWitt used when bumping Bradley's truck, demonstrates that the amount of force used to bump Bradley's truck was not objectively unreasonable in the totality of the circumstances facing Officer DeWitt.  Bradley's claim that Officer DeWitt violated his Fourth Amendment rights by using excessive and unreasonable force claim therefore fails.

Lastly, to avoid the application of qualified immunity, Bradley must show that it would have been clear to a reasonable officer in Officer DeWitt's position that his conduct violated the Fourth Amendment.  *See Saucier v. Katz*, 533 U.S. 194, 202 (2001); *see also Perez v. Oakland County*, 466 F.3d 416, 427 (6th Cir. 2006).  Research does not reveal any case law decided by the United States Supreme Court or the United States Court of Appeals for the Sixth Circuit that would have alerted a reasonable officer in Officer DeWitt's position that bumping Bradley's truck with a non-lethal amount of force under the circumstances violated Bradley's constitutional rights. *See Perez*, 466 F.3d at 427. Accordingly, under the particular circumstances of this case, qualified immunity shields Officer DeWitt from Bradley's Fourth excessive force claim.

### E.    <u>Summary</u>

The Mechanicsburg Defendants' Motion to Dismiss is well taken on two points: (1) Bradley's first and third claims are time barred to the extent he challenges the search of his home on September 10, 2003; and (2) Bradley's claims are barred under *Heck v. Humphrey* with the single exception of Bradley's excessive force claim against Officer DeWitt.

The Mechanicsburg Defendants' Motion to Dismiss lacks merit on two points: (1) Bradley's claims are not barred by *Rooker-Feldman*; and (2) qualified immunity does not bar

Bradley's claims on the grounds set forth in the Mechanicsburg Defendants' Motion to Dismiss, *see* Doc. #32 at 10.

Bradley's second claim against Officer DeWitt is subject to *sua sponte* dismissal under 28 U.S.C. §1915(e)(2), because Bradley's Fourth Amendment claim against Officer DeWitt lacks merit, and because qualified immunity shields Officer DeWitt from Bradley's second claim.

*Sua sponte* review, under 28 U.S.C. §1915(e)(2), of Bradley's claims against Defendants Curnutte and Selvaggio reveal that these claims are subject to dismissal under *Heck v. Humphrey*. Because of this, Defendants Curnutte and Selvaggio's Motion for Judgment on the Pleadings should be denied as moot. Although Bradley has also filed a Notice of Voluntary Dismissal without prejudice of these claims (Doc. #41), Defendants Curnutte and Selvaggio object, seeking a merits ruling and dismissal with prejudice (Doc. #42). In light of the conclusions reached in this Report, dismissal with prejudice of Bradley's claims against Defendant Curnutte and Selvaggio is warranted.

### IT IS THEREFORE RECOMMENDED THAT:

1.  The Mechanicsburg Defendant's Motion to Dismiss (Doc. #32) be GRANTED in part as to all of Plaintiff's claims except Plaintiff's Fourth Amendment excessive force claim against Defendant DeWitt;

2.  The Mechanicsburg Defendants' Motion to Dismiss (Doc. #32) be DENIED in part as to Plaintiff's Fourth Amendment excessive force claim against Officer DeWitt;

3.  Plaintiff's Fourth Amendment excessive force claim against Officer DeWitt be DISMISSED *sua sponte* with prejudice under 28 U.S.C. §1915(e)(2);

4.      Plaintiff's claims against Defendants Curnutte and Selvaggio be DISMISSED *sua sponte* with prejudice under 28 U.S.C. §1915(e)(2);

5.      Defendants Curnutte and Selvaggio's Motion for Judgment on the Pleadings (Doc. #30) be DENIED as moot; and

6.      The case be terminated on the docket of this Court.

December 15, 2006

       s/ Sharon L. Ovington    
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).